McKinney, J.
delivered the opinion of the court.
On the 15th day of February, 1847, the complainant obtained a judgment, by confession against the defendant, Thomas Wells, for $3225 83, of which a remittitur was entered upon the record, for $235 21. And on the 18th day of the same month this bill was filed, under the act of 1844, ch. 182. By said act, it is provided, “that securities and creditors shall have the right in law or equity, to recover from any person who may have received usurious interest from the principal or debtor, the amount so received, over and above lawful interest in satisfastion of their debt or liability; and such unlawful interest, in the hands of the usurer, shall be in all cases, a fund to satisfy bona fide creditors and securities; provided they shall, before they bring suit under this act, be judgment creditors.” The bill charges, that an execution issued on said judgment, and was placed in the hands of the sheriff of Davidson county, the residence of the defendant, Wells, and that the same had been returned nulla bona. It further charges, that the defendant, Ewing, is indebted to Wells in a large amount, growing out of a long continued and extensive course of usurious transactions between said parties; in which the defendant Ew-' ing, from time to time, exacted and received from Wells, large *485 sums as usurious interest. The amount of usury thus received, is unknown to the complainant; but, he alledges, that it is more than sufficient to satisfy his judgment; and he prays a discovery and account. The bill is answered by both defendants. Ewing in his answer, states, that at various times since 1838, he left in the hands of Wells, and advanced to him, at his special request, divers sums of money; upon which Wells agreed to pay him at the rate of 12J per cent, interest per an-num. That up to the 24th day of June, 1846, he had not, in any instance, received usurious interest from Wells; though, in the several notes from time to time executed to him by said Wells, interest at the rate above stated, was included. That shortly before the 24th day of June, 1846, Wells became embarrassed in his circumstances, and defendant was doubtful of his ability and intention to pay him; that his debtto the amount of $7000, or upwards, was not secured in any manner, and he became urgent with Wells to pay, or make his debt secure; and wished to have the matter finally adjusted with him. That Wells was aware of his anxiety, and was determined as he believes, to take advantage of it to compel him, with a view to his security, to take property at enormous prices in discharge of his debt. That Wells was the owner of two valuable store houses on the public square in Nashville, one worth about $10,000, and the other $12,'000; which defendant was willing to take at a fair valuation, towards his debt; but Wells insisted on a price much beyond their value, and sometimes hesitated whether, in any event, he would let them go to defendant. At length, defendant agreed, from fear of losing a large portion of his debt, to take said two store houses at the very high price of $27,500. Defendant’s debt at that time, 24th June, 1846, including usurious interest, was $25,400, which he gave up in payment for said property, and the balance, being $2,100, was paid by a sale to Wells of thirteen acres of land in the vicinity of Nashville. In pursuance of this agreement, said houses *486 were conveyed to defendant; and this is the only manner in which he ever received usury from Wells. He states that the property was at a fair estimate, worth some $22,000; but that if he shall be held to account for the price agreed on, $27,-500, then, he admits, he did receive usurious interest from Wells to an amount sufficient to satisfy complainant’s judgment; and that, waiving an account, it may be so decreed. The chancellor decreed against the defendant, and the case comes into this court by appeal. It is contended that this decree is erroneous for several reasons:
1st. It is argued that the complainant is not a bona fide creditor within the meaning of the act, because the notes ón which his judgment was obtained, were usurious; and, therefore, he is not entitled to the relief he seeks in his bill. It is said that the release of $235 21, was for usurious interest. Taking the fact to be so, can the position assumed by the defendant’s counsel, be maintained? • We think not. The notes are set forth in the record and made part thereof, and do not upon their faces furnish any evidence of usury. If the defendant Wells, had filed his plea of usury under the act of 1835, he could only have avoided the excess over legal interest; and if the complainant, by a voluntary release, discharged the usurious interest, and conceded to defendant all that he was entitled to demand, and took judgment for no more than at law, or in equity, he was entitled to, it cannot be perceived upon what ground he is not to be regarded as a bona fide creditor, or why he should be repelled in a court of chancery.
2d. Itis argued, that the act of 1844, does not repeal, or dispense with the established rule, that a judgment creditor cannot go into a court of chancery to obtain satisfaction of his judgment out of the equitable personal assets of the debtor, without showing that he has exhausted his legal remedies, by the return of an execution nulla bona.
And it is said, the issuance and return of the execution in *487 this case should be regarded as of no effect; because it appears from the bill that it was issued and returned during the term at whieh the judgment was rendered, and within three days thereafter. We are not prepared to hold, that, under this statute, it is incumbent on the creditor to do more than establish the validity of his debt by judgment, before filing his bill. It is not necessary, however, to determine this question; because, in the first place, it does not appear from anything in the record before us, that, in point of fact, the execution did issue during the term; for aught that we can judically know, the court may have adjourned before its issuance. But again; upon a proper case being made, the circuit court had authority to award execution during the term at which the judgment was rendered; and nothing appearing in this record to the contrary, we are to presume that such a case was made out, and that the execution was regularly issued by authority of the court.
It is argued, that the return of the execution on the third day after its issuance, was illegal and should be treated as a nullity; because it was the duty of the sheriff to retain the execution in his hands until the return day, to the end that he might levy upon any property of the defendant’s whiclq might be found before the day fixed by law for its return, and that this not having been done in the present case, it cannot be held that the complainant has exhausted-his legal remedy; and to sustain this position, we are referred to the opinion of the chancellor, in the case of Cassidy vs. Meacham & Pond, 3 Paige, R. 311.
The law is otherwise in this state, and the practice has been wholly different. We think, the sheriff, upon his official responsibility, may make return of an execution at such time, before the return day, as he may deem proper. And upon his return of nulla bona, in such cases where this may be necessary to give the party a title to proceed in equity, a bill may be properly filed; and it will not be enquired into, in the court *488 of chancery, whether or not the execution was prematurely, or improperly returned: these are questions belonging to another forum, in a proceeding against the sheriff.
3d. It is insisted, with much plausibility, that, upon the merits of this cause, no decree ought to be made against the defendant; because, estimating the property conveyed to him in discharge of his debt, at its fair cash value, at the time, he did not, in point of fact, receive more than the principal and legal interest due to him from Wells; that the price given by him for the property exceeded its value to an amount equal to the usurious interest reserved upon his debt; and that he cannot, therefore, be regarded as having received any usurious interest. If there were anything in the case to warrant the conclusion, that in view of the usury, the property had been estimated by the parties at a price beyond its value, equal, or nearly equal, to the amount of usury reserved; and that the defendant agreed to take it at such overvaluation,' in consideration of usurious interest received upon his debt, we should feel no hesitation in refusing relief. But, we think the proof in this case, repels any such conclusion; the defendant Ewing had no purpose or intention to relinquish any part of the usurious interest; he felt under no obligation to do so; on the contrary, he was pressing Wells to pay, or secure the entire debt; and fearing, from his embarrassed condition, that a large amount of the debt might be lost, he was willing to take the property at what he regarded its cash value. Wells on the other hand, made no complaint on the score of usury, and asked no abatement of the debt on that account; but was willing- to transfer the property, in discharge of the debt, at what he considered its value. The parties differed widely in their estimate of value; Ewing was willing to give $22,000, and Wells wanted $29,000. Finally, however, after several interviews, and after various offers had been made by Ewing, and rejected by Wells, the price of $27,500, was agreed upon. We think *489 from tbe proof in tbe record, that this was a price much beyond tbe cash value of the property; and that Ewing was impelled to give it, from fear of losing a large portion of the debt. Still, it was a price fairly agreed upon between the parties, after much deliberation; and,, in such case, we think the only safe principle is that announced by this court in the case of Boyers vs. Boddie, 3 Hump. 666, that, “the price fixed upon property by parties themselves, when fairly done, cannot be changed, or controlled, by courts of justice.”
The decree of the chancellor is, therefore, affirmed, but the costs will be paid by the complainant out of the fund.